## Commonwealth *v.* Bonaparte, Appellant.

Argued June 13, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

398

*Jan M. Wiley*, with him *Griest & Wiley*, for appellant.

*John T. Miller*, First Assistant District Attorney, with him *John F. Rauhauser, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 15, 1966:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
I dissent for two reasons:

I

The Commonwealth, over objection, introduced into evidence a statement given by appellant when first taken into police custody. In this statement appellant purportedly denied any knowledge of the burglary and declared that he had received the stolen wigs from a boy in Harrisburg.

The only warning given to appellant prior to the taking of the statement was: "You are now advised to, rights for an attorney to be present and no attorney being present, are you willing to give us a voulantary [sic] statement without threats promises and also knowing that this may be used against you in the event this comes to trial?"

I cannot agree with the lower court that, "Implicit in the foregoing, is the warning that the Defendant had the right to remain silent." The above direction might convey the impression that an accused has the right to remain silent only so long as counsel is absent, not that he has an absolute right to remain silent; that ultimately, when counsel appears, he will have to speak.

The instructions given by the police, therefore, were inadequate to assure that appellant was voluntarily waiving his right to remain silent. Waivers of constitutional guarantees should not depend on unstated inferences which a defendant is required to draw from a purely formal inquiry.

The lower court suggests further that the admission into evidence of this statement did not prejudice appellant, since the statement was entirely self-serving. I cannot agree.

Appellant did not take the stand or present other evidence in his defense. At no point did he admit that he had possession of these or any other wigs. The use of this statement was prejudicial, therefore, in that it conveyed to the jury the impression that appellant had been in possession of the stolen wigs at some time. As the District Attorney himself stated: "I have a statement here. He doesn't admit he took the wigs but I think it's a statement that the jury should consider, certainly, on the question of receiving stolen goods." (N.T. 43).

The Supreme Court noted in *Miranda v. Arizona,* 384 U.S. 436, 477 (1966): "[N]o distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. . . . In Escobedo itself [*Escobedo v. Illinois,* 378 U.S. 478 (1964)], the defendant fully intended his accusation of another as the slayer to be exculpatory as to himself."

In summary, the statement clearly incriminated appellant by establishing that he had been in possession of the stolen wigs at one time. Since the police secured the statement without affording appellant the requisite constitutional safeguards, it should not have been admitted into evidence. On this ground, therefore, I would vacate the judgment of sentence and order a new trial.

## II

The judgment of sentence should be reversed, in my opinion, because the Commonwealth's evidence did not sufficiently establish that the wigs produced at trial were in fact the same wigs which had been stolen.

The manager of the wig store testified that she recognized the wigs produced at trial. On cross-examination, however, she testified that there were many wigs which were exactly the same as the exhibits, and that these wigs were not unique. She testified further that there were no identifying marks on the wigs, that similar wigs were available, and that a wig could be restyled after it left the shop. Finally, the Court asked the following questions:

"The Court:

Q. Without any identifying marks on those wigs, how can you tell whether they came from your shop or from Camp Hill or any place? How can you possibly tell that?

A. I'm familiar with all the wigs, especially the ones that were on display, the pieces are rather worn in some of them.

Q. The pieces are worn?

A. In other words, they aren't completely new looking.

Q. Wouldn't this be true of other wigs in other shops?

A. Yes.

Q. How can you tell then—suppose someone purchased them from a shop in Camp Hill. How could you possibly know?

A. There's no—I don't know. Don't you ever just know something?"

A jury may not be permitted to reach its verdict on the basis of speculation or conjecture. In this case the testimony of the store manager was insufficient to establish the identity of the stolen goods. The wigs were not unique, nor were there any identifying marks or characteristics by which they could be distinguished from many other wigs. In the absence of such identification, the jury should not have been permitted to consider whether the wigs which appellant had allegedly sold to individuals were the wigs originally stolen.